IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| TERESA KAY OWEN, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 11-G-1672-NE |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

The plaintiff, Teresa Kay Owen, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f).  The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant case, the ALJ, John S. Lamb, determined the plaintiff met the first two tests, but concluded did not suffer from a listed impairment. The ALJ found the plaintiff unable to perform her past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment (such as pain, fatigue or mental illness) also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony. Foote, at 1559.

### THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians

3

employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

### THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

4

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

> When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons

are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers within the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be

asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law.  Id at 1401.  The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims."  Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

In the present case the plaintiff alleges she is disabled due to in part to panic attacks and depression.  The plaintiff argues that GAF scores assessed during her treatment at the Calhoun-Cleburne Mental Health Center establish that she is disabled.

During the course of plaintiff's treatment GAF scores were assessed on a number of occasions.  On December 4, 2008, the plaintiff's treating therapist assessed a

GAF score of "50 – 41  Serious impairment in functioning."  Record 278.  On a December 8, 2008, psychiatric evaluation, the plaintiff was given a GAF score of 45.  This form was signed by the plaintiff's treating psychiatrist December 23, 2008.  Record 271.  On January 9, 2009, the plaintiff's treatment plan indicated a GAF score of "50 – 41 Serious impairment in functioning."  Record 239.  The treatment plan was signed by the plaintiff's treating psychiatrist on January 12, 2009.  Record 242.  A February 26, 2009, physician progress note signed by the plaintiff's treating psychiatrist, assessed a GAF score of "50 – 41  Serious impairment in functioning."  Record 238.  On July 8, 2009, in a general progress note the plaintiff's treating therapist assessed a GAF score of "50 – 41 Serious impairment in functioning."  Record 237.  On February 1, 2010, the plaintiff's treating therapist assessed a GAF score of "60-51 Moderate difficulty in functioning." Record 256.  On March 1, 2010, the plaintiff's treating therapist assessed a GAF score of "50 – 41  Serious impairment in functioning."  Record 258.

In addition to these GAF scores from treating sources, the plaintiff was seen by Dr. Mary Arnold, Psy. D., for consultative psychological evaluation on January 7, 2009.  Dr. Arnold assessed a GAF score of 55.

The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning.  Diagnostic and Statistical Manual of Mental Disorders 32 (4th Edition, Text Revision) ("DSM-IV-TR").  A GAF of 41-50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent

shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM-IV at 32 (emphasis in original). The plaintiff was assessed GAF scores in this range on six occasions between December 4, 2008 and March 1, 2010. During this period of time the plaintiff received only one GAF score above 50 from a treating source.[1]

The ALJ did not discuss the GAF scores assessed by the plaintiff's treating psychiatrist. Nor did the ALJ give any reason for refusing to credit these GAF scores. The ALJ did not rely upon the GAF score assessed by Dr. Arnold to discredit those of the plaintiff's treating psychiatrist. However, he incorrectly stated that Dr. Arnold "commented that the claimant, in an effort to get others to attend her needs, she <u>would</u> tend to exaggerate her symptoms." Record 18 (emphasis added). Dr. Arnold's report in fact contains the following: "Mrs. Owen general demeanor is dramatic; her passivity makes for a tedious interview. There is nothing odd about the claimant's behavior; in an effort to get others to attend to her needs Mrs. Owen <u>might</u> tend to exaggerate her symptoms." Record 206 (emphasis added).

The plaintiff testified at her ALJ hearing that she was limited in her ability to follow even simple instructions due to her mental illness. The vocational expert was asked whether the plaintiff would be able to work if her testimony were credited. The

---

[1] A GAF score of 51-60 reflects: "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers.)" DSM-IV-TR at 34 (emphasis in original).

vocational expert testified as follows: "If that was true to that degree that's been described, she would not be able to do the jobs I've mentioned or any of her previous work or any other work." Record 79. Therefore, unless the plaintiff's testimony was properly discredited, she is disabled based upon the expert vocational testimony adduced at her ALJ hearing.

Because the ALJ did not articulate reasons supported by substantial evidence for refusing to credit the opinions of the plaintiff's treating psychiatrist (as expressed through the GAF scores), these GAF scores must be accepted as true. These GAF scores provide very strong support for the plaintiff's testimony about disabling mental symptoms. In light of these GAF scores, the ALJ's articulated reasons for rejecting the plaintiff's testimony are not supported by substantial evidence. Therefore, the plaintiff's testimony must be accepted as true, and she is disabled within the meaning of the Social Security Act.

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 28 June 2012.

                                      UNITED STATES DISTRICT JUDGE
                                           J. FOY GUIN, JR.